1

2

3

4

5

6

7             UNITED STATES DISTRICT COURT

8             CENTRAL DISTRICT OF CALIFORNIA

9                    WESTERN DIVISION

10   JEREMY DRAKE and ADAM SCOTT, )        CASE NO. CV 09-6467 ODW (RCx)
     on behalf of themselves and others )
11   similarly situated,              )
                                      )        ORDER DENYING PLAINTIFFS'
12                  Plaintiffs,        )        MOTION FOR CLASS
                                      )        CERTIFICATION [29]
13   vs.                              )
                                      )
14   MORGAN STANLEY& COMPANY,         )
     INC., MORGAN STANLEY DW, INC.,)
15   and DOES 1-100 inclusive,        )
                                      )
16                  Defendants.       )
                                      )
17   _____ )

18

19   **I.     INTRODUCTION**

20          This Motion for Class Certification arises out of the named Plaintiffs' Jeremy

21   Drake ("Drake") and Adam Scott ("Scott") (collectively, "Plaintiffs") employment as

22   Financial Advisors ("FA") with Defendant Morgan Stanley & Company, et al.,

23   (collectively, "Defendants").  According to Plaintiffs, Defendants systematically

24   denied them (and members of the proposed classes) overtime pay and expense

25   allowances to which they were entitled on the basis of their "job title alone."  (Motion

26   for Class Certification "MCC" at 1.)

27          Plaintiffs now move to certify three classes of FAs pursuant to Federal Rules of

28   Civil Procedure 23(b)(2) and (b)(3).  Having considered the arguments and materials

                                      1

advanced in support of and in opposition to the instant Motion, the Court deemed the matter appropriate for decision without oral argument, and vacated the April 26, 2010 hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15.  For the following reasons, Plaintiffs' Motion for Class Certification is hereby DENIED.

## II.    ALLEGATIONS, PROCEDURAL BACKGROUND, AND PROPOSED CLASSES

Because the Court is required to evaluate the appropriateness of class certification independent of the substantive merits of the operative allegations as explained below, and in consideration of the time and effort the parties have already devoted to securing and enforcing the Protective Order entered by Magistrate Judge Chapman in this matter (Dkt. # 23), the Court only repeats those limited portions of the record, Plaintiffs' allegations, and Defendants' counter-allegations that are pertinent to a resolution of the instant Motion.

Since about February 16, 2006 (the "class period"), Defendants have employed roughly 2,000 Financial Advisors ("FAs") to provide "customized investment solutions and services for individuals of substantial means, families and foundations." (Plaintiffs' Compendium of Evidence Submitted in Support of MCC "PCE" Exhibit "Ex." K.)  According to Plaintiffs, while employed by Defendants, they came to find that "it [was] Defendants' standard operating practice to . . . [require] newly hired FAs to abide by a set of previously undisclosed policies and agreements."  (Complaint "Compl." ¶ 25.)  Plaintiffs claim those provisos included, among others, that: the FA execute a promissory note in the same amount as a "bonus," and that the principal and interest payments for that note would thereafter be deducted from the wages offered and promised as an inducement to employment; any value of the FA's "good will" would immediately become Defendants' property even if the FA's client relationships predated any affiliation with Defendants; Defendants could terminate the FA's employment at any time without notice or cause, whereas, if the FA resigned his

employment or was fired, the entire amount of the promissory note was to become immediately due and payable and he would be restrained from communicating with his clients for a full year; and the FA would receive no fixed salary and his compensation would be subject to a fixed monthly debit, which might also accumulate over time as an aggregate "deficit."  (Compl. ¶ 25(a-c, e).)  Plaintiffs refer to this compensation system as Defendants' "golden handcuffs," and claim that all putative class members were subject to the same practices.  (Compl. ¶ 27.)

Plaintiffs further complain that during the class period, Defendants required its FAs to fund Defendants' operating costs out of their own pockets "by imposing a patently inadequate 'expense allowance'" based on the prior year's production, and knowingly requiring its "FAs [to fund] its business by personally paying for travel, postage, and even compensation for assistant staff."  (Compl. ¶ 25(d);  MCC at 1; PCE Ex. H.)  Plaintiffs also allege that Defendants have a blanket policy that FAs are (as a "class") ineligible for overtime pay.  (MCC at 1.)

Plaintiffs filed their putative class action lawsuit in the Los Angeles Superior Court on July 30, 2009, asserting five California causes of action against Defendants, including failure to pay earned wages free and clear of employer deductions, charges and expenses; failure to pay minimum wage for all hours worked; failure to pay premium overtime compensation; failure to timely pay earned wages; and unfair competition and restraint of trade.  (Dkt. # 1.)  On September 4, 2009, Defendants removed this matter from state court to federal court, basing federal jurisdiction on the Class Action Fairness Act ("CAFA").  (Dkt. # 1.)  On February 2, 2010, Defendants filed their Amended Answer and Counterclaims Against Plaintiff Jeremy Drake, wherein Defendants sought to recover the balance due on loans extended to Plaintiff Drake upon the initiation of his employment, though he is now employed with a competing company.  (Dkt. # 28; Defendants' Summary of Evidence Submitted in Opposition to MCC "DSE" 80. )  While Scott still appears to be employed by

Defendants, by all accounts, his performance is lacking and his personal life interferes with the performance of his professional duties.  (DSE 88.)[1]

Plaintiffs now propose the following classes:

1.     Expense Reimbursement Class: All of Defendants' California employees who held the position of FA during the class period; seeking restitution, disgorgement, penalties and equitable relief, under California Business and Professions Code Section 17200, *et seq.*, and California Labor Code Sections 221-223, 2802, and 2699(a) and (f).

2.     Overtime Class: All of Defendants' California employees who held the position of FA during the class period; seeking restitution, disgorgement, penalties and equitable relief, under California Business and Professions Code Section 17200, *et seq.*, and California Labor Code Sections 1194 and 2699(a) and (f).

3.     Restraint of Trade Class: All of Defendants' California employees who held an FA position during the class period and executed a "Financial Advisor Employment Agreement" and/or "Acknowledgment of Promissory Note;" seeking declaratory relief to prevent the enforcement of the non-competition and acceleration provisions of these agreements, as well as remedies, including restitution, disgorgement, penalties and equitable relief, under California Business and Professions Code Section 17200, *et seq.*, and California Labor Code Sections 1194 and 2699(a) and (f).

(Notice of Motion for Class Certification "MCC" at 2.)

## III.   LEGAL STANDARD FOR CLASS ACTION LAWSUITS

Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able

---

[1] Indeed, Scott's Counsel prohibited Scott from answering questions relating to his illegal drug use during the workday.  DSE 89.

1  to present claims on an individual basis.  *Haley v. Medtronic, Inc.*, 169 F.R.D. 643,

2  647 (C.D. Cal. 1996) (citing *Crown, Cork & Seal Co. v. Parking*, 462 U.S. 345

3  (1983)).  The party seeking certification bears the burden of showing that each of the

4  four requirements of Federal Rule of Civil Procedure 23(a) and at least one

5  requirement of Federal Rule of Civil Procedure 23(b) have been met.  *Dukes v.*

6  *Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007) (citing *Zinser v. Accufix*

7  *Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended*, 273 F.3d 1266 (9th Cir. 2001).

8        Rule 23(a) requires the party seeking certification to prove, without going into

9  the substantive merits or validity of the claims at issue (*see e.g. United Steel, Paper &*

10 *Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers*, 593 F.3d 802, 808

11 (9th Cir. 2010)) that:

12        (1) the class [be] so numerous that joinder of all members is impracticable
         [numerosity], (2) there [be] questions of law or fact common to the class
13        [commonality], (3) the claims or defenses of the representative parties [be]
         typical of the claims or defenses of the class [typicality]; and (4) the
14        representative parties []fairly and adequately protect the interests of the class
         [adequacy].

15

16  Fed. R. Civ. P. 23(a).  *See also Hanon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th

17 Cir. 1998).  The action must also fit within one or more of the categories of actions

18 described in Federal Rule of Civil Procedure 23(b), which may be satisfied if:

19

20        the party opposing the class has acted or refused to act on grounds that apply
         generally to the class, so that final injunctive relief or corresponding
21        declaratory relief is appropriate respecting the class as a whole; *or* the court
         finds that the questions of law or fact common to class members predominate
22        over any questions affecting only individual members, and that a class action
         is superior to other available methods for fairly and efficiently adjudicating
23        the controversy. The matters pertinent to these findings include: (A) the class
         members' interests in individually controlling the prosecution or defense of
24        separate actions; (B) the extent and nature of any litigation concerning the
         controversy already begun by or against class members; (C) the desirability
25        or undesirability of concentrating the litigation of the claims in the particular
         forum; and (D) the likely difficulties in managing a class action.
26
   Fed. R. Civ. P. 23(b)(2), (3) (emphasis added).
27

28

## IV.   DISCUSSION

Plaintiffs are correct that "[f]or purposes of the present procedural motion, the Court need not (and should not) decide the merits" of Defendants' various contentions, including the application of their asserted overtime defenses, as Plaintiffs fail to satisfy all of the class certification requirements of Rule 23 as described below. *See* MCC at 2.

### A.   Numerosity of Parties

One or more members of a class may sue or be sued as representative parties on behalf of all class members only if class members are so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23.  Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable. See 3B Moore's Federal Practice P 23.05(1) (2d ed. 1974).  Here, Plaintiffs note that Defendants employed approximately 2,000 FAs in the relevant division throughout the course of the class period (MCC at 7), and numerosity does not seem to be in dispute.

### B.   Commonality of Legal and Factual Issues

A class has sufficient commonality if there are questions of fact and law which are common to the class.  Fed. R. Civ. P. 23(a)(2).  This rule has been construed permissively; all questions of fact and law need not be common to satisfy the rule. *Hanlon v. Chrysler Corp.*, 150 F.3d at 1119.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.  *Id*.  Plaintiffs argue, and Defendants do not seem to dispute, that "[d]etermining whether [Defendant's] 'company-wide corporate practices and policies' violate California law is sufficient to satisfy Rule 23(a)(2)."  (MCC at 7.)

### C.   Typicality of Claims and Defenses of the Class Representatives

A member of a class may sue as a representative party on behalf of that class only if the representative's claims or defenses are typical of the claims or defenses of

that class.  Fed. R. Civ. P. 23.  "Like the commonality requirement,[2] the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'"[3]  *Hanlon v. Chrysler Corp.*, 150 F.3d at 1020.  However, the typicality requirement does dictate that "each class member's claim arise[] from the same course of events, and each class member make[] similar legal arguments to prove the defendant's liability.'"  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (internal quotations omitted).  *See also Dukes v. Wal-Mart, Inc.*, 509 F.3d at 1184 (requiring that the injuries sustained by the members of the proposed class result from the same allegedly discriminatory practice).

Along this vein, "several courts have [found typicality lacking, and] held that class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) (internal citations and quotation marks omitted).  In *Hanon*, the Ninth Circuit noted that the proposed class representative's "unique background and factual situation require[d] him to prepare to meet defenses that [were] not typical of the defenses which [could] be raised against other members of the proposed class."  *Id*. at 509.  The resulting variance in the applicable legal theories the defendant could assert to defeat liability in the proposed representative's unique case was sufficient to defeat a finding of typicality, and therefore, class certification.  *Id.*

---

[2] Note that "although the commonality and typicality requirements of Rule 23(a) tend to merge, each factor serves a discrete purpose.  Commonality examines the relationship of facts and legal issues common to class members, while typicality focuses on the relationship of facts and issues between the class and its representatives. *Dukes v. Wal-Mart, Inc.*, 509 F.3d at 1184 n.12 (internal citations and quotation marks omitted).

[3] Thus, in the context of a class action arising from a dispute related to the treatment of a "class" of employees, as is the case at bar, the *Dukes* court noted that treatment of employees occurring across job categories or amongst those with differing employment duties would not serve to defeat class certification only where the primary offensive practices used by the employer were themselves similar across the entire spectrum of the class members.  *Dukes v. Wal-Mart, Inc.*, 509 F.3d at 1184-85 (approving of consistent sister-circuit rulings).

Plaintiffs, apparently convinced that commonality and typicality are entirely synonymous, pay a great deal of "lip service" to issues such as whether or not Defendants' alleged business expense-shifting policy was proper under California Law. (*See e.g.* MCC at 8-9.) In so doing, Plaintiffs completely fail to address those arguments raised by Defendants that serve to most effectively defeat a finding of typicality. For instance, "Plaintiffs admitted to extensive differences in . . . FA job duties, investment philosophies, marketing styles, and other key differences" pertinent to an adjudication of, at the very least, Defendants' defenses to the Expense Reimbursement and Overtime Class allegations.[4] (Opposition "Opp'n" to MCC at 11, citing DSE 91.) Therefore, Plaintiffs cannot prove that each class member's claims arose from the same course of events or same alleged practice employed by Defendants. Said otherwise, Plaintiffs cannot establish typicality because, given that there was nothing typical about how the FA job was carried out, Defendants' treatment of Drake, Scott, or the other FAs could similarly not have been "typical."

More compelling still are the unique defenses to which both named Plaintiffs are subject, including, as Defendants note, lack of credibility and unclean hands. (Opp'n to MCC at 11, citing DSE 87-89 wherein Scott's substance abuse and its interference with his professional performance is explored; 66, wherein Scott made clear his prior review of the terms of the "acceleration" documents that are now the subject of Restraint of Trade Class; 70-74 wherein Plaintiffs admit the failure to disclose alcohol related offenses in his application, to requesting reimbursements for "under the table" cash payments that were against company policy, and never filling out the requisite forms in the prescribed manner; 76 wherein the recipients of such "under the table" payments deny their receipt; 77-78 wherein Drake tells differing stories regarding Blackberry access and charges.) Indeed, Scott's "unique background," as well as the "variance" in Drake's factual accounts both demonstrate the lack of typicality in this case.

---

[4] (*See* Opp'n to MCC at 15 (citing 29 C.F.R. § 541.203(b)).)

### D.    Adequacy of Representation

As in the case of typicality, members of a class may sue as representatives on behalf of the class only if they will fairly and adequately protect the interests of the class as a whole. Fed. R. Civ. P. 23. "[I]f there is more than one named representative, it is not necessary that all the representatives meet the Rule 23(a)(4) standard; as long as one of the representatives is adequate, the requirement will be met." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 961 (9th Cir. 2009) (citing *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162 n.2 (9th Cir. 2001); 7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1765, at 326 (2005)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp*., 150 F.3d at 1020. *See also Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *In re United Energy Corp. Solar Power Modules Tax Shelter Investments Securities Litigation*, 122 F.R.D. 251, 257 (C.D. Cal. 1988) (requiring, in part, "that the . . . plaintiff's interests not be antagonistic to the class").

Defendant argues, and the Court agrees, that Plaintiffs have not established that either Drake or Scott is an adequate representative for any of the classes they seek to certify. Drake's interests are antagonistic to the class by virtue of the fact that he is subject to Defendants' counterclaims, whereby Drake is allegedly responsible for the repayment of nearly $90,000, exclusive of interest and costs. (Dkt. # 28.) *See also United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers*, 593 F.3d at 805 (suggesting the propriety of denial of class certification on the basis of inadequacy because of counterclaims asserted against named plaintiffs). The Court is acutely aware of the parties' repartee following the Entry of Default against Drake (Dkt. # 39), and the round of *ex parte* briefing regarding Drake's request for relief wherein Drake accused Defendants of seeking Default in order to

1    manipulate Drake into settling this matter in contravention of the interests of the class.

2    (Dkt. #s 41, 45-48.)  Whether or not that was the case is immaterial.  The simple

3    existence, and indeed survival (*see United Steel, Paper & Forestry, Rubber, Mfg.*

4    *Energy, Allied Indus. & Service Workers*, 593 F.3d at 805) of the counterclaims

5    against Drake precludes the Court from finding that he is an adequate class

6    representative.  Likewise, Scott is an inadequate representative for the reasons

7    discussed above.  Given his admitted substance abuse and sub-standard performance,

8    Scott is subject to unique defenses not typical to the remainder of the class.

9         Because all four Rule 23(a) factors are not satisfied, the Court would be remiss

10   in certifying any of Plaintiffs' proposed classes under any circumstances, and would

11   be justified in ending its analysis here.  However, out of an abundance of caution, the

12   Court will briefly explain why the rest of the factors relevant to the class certification

13   analysis similarly weigh against certification of any of Plaintiffs' proposed classes.

14        E.    Injunctive or Declaratory Relief

15        Of the three possible categories of class actions listed in Rule 23(b), Plaintiffs

16   first attempt to certify their class under Rule 23(b)(2), which applies if "the party

17   opposing the class has acted or refused to act on grounds that apply generally to the

18   class, so that final *injunctive relief or corresponding declaratory relief* is appropriate

19   respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2) (emphasis added).  Rule

20   23(b)(2) class actions are therefore appropriate only where the primary relief sought is

21   declaratory or injunctive.  *Molski v. Gleich*, 318 F.3d 937 (9th Cir.2003) (noting that

22   monetary damages must not be the "predominant" relief sought, but may only be

23   "secondary" to the primary claim for injunctive or declaratory relief); *Zinser v.*

24   *Accufix Research Institute, Inc.*, 253 F.3d at 1195.

25        To determine whether the proposed class seeks predominantly monetary relief

26   or injunctive or declaratory relief, courts in the Ninth Circuit "examine the specific

27   facts and circumstances of each case, focusing predominantly on the plaintiffs' intent

28   in bringing the suit."  *See Dukes v. Wal-Mart, Inc.*, 509 F.3d at 1186 (citing *Molski v.*

     *Gleich*, 318 F.3d at 950; *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 860 (9th Cir.

2001); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1240 n.3 (9th Cir. 1998)).

"At a minimum . . . [the court] must satisfy [itself] that: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Dukes v. Wal-Mart, Inc*., 509 F.3d at 1186 (internal citations omitted).  In the case of an employment action, a former employee lacks standing to sue for declaratory or injunctive relief because he may realize no benefit upon the successful prosecution of his claim (*See Walsh v. Nev. Dep't of Human Res*., 471 F.3d 1033, 1037 (9th Cir. 2006), and it is thus difficult to fathom how such a plaintiff's intent could  not be predominantly damages-based.

Here, the only class that Rule 23(b)(2) even remotely applies to is Plaintiffs' third proposed class, or the Restraint of Trade Class, as Plaintiffs make no mention of any declaratory or injunctive relief sought by the other two proposed classes.  In addition, as noted above, Drake is no longer Defendants' employee and does not have standing to sue for injunctive relief under Rule 23(b)(2).[5]  Furthermore, the facts and circumstances of this case demonstrate that Plaintiffs' primary intent in bringing this suit is to recover monetary damages and that there is no reason to believe that reasonable Plaintiffs would bring such an action in the absence of the availability of such relief.  Indeed, four of Plaintiffs' five claims seek nothing more than the recovery of unpaid minimum wages, overtime charges, and reimbursement expenses to which they believe they are entitled.  (*See* Dkt. # 1.)  As such, injunctive or declaratory relief are clearly not the "predominant" relief Plaintiffs seek.[6]  Plaintiffs do not even dispute

---

[5]For this reason, he would similarly be an inadequate class representative, at least as it would relate to a class certified under Rule 239(b)(2), as he would not be a member of the class he sought to represent.  *See Dukes v. Wal-Mart, Inc*., 509 F.3d at 1184, 1189.

[6] In a technical sense, the only point at which injunctive or declaratory relief even enters "the mix" is when Plaintiffs discuss their desire to escape the effects of what they term Defendants' "golden handcuffs" so that they can avoid the repayment of the "loans" extended upon the acceptance of their employment as well as presumably transact further business with clients whom, on the one hand they

1   Defendants' contention that their primary, if not only (real) intent is to recover

2   monetary damages.  As such, Rule 23(b)(2) is an inappropriate mechanism by which

3   to certify any of Plaintiffs' proposed classes.

4       F.   Lack of Predominance or Superiority of Class Action Mechanism

5       A class action is appropriate under Rule 23(b)(3), the other section on which

6   Plaintiffs rely, where "questions of law or fact common to the members of the class

7   predominate over any questions affecting only individual members," and "a class

8   action is superior to other available methods for fair and efficient adjudication of the

9   controversy."  Fed. R. Civ. P. 23(b)(3); *Amchem Prods. v. Windsor*, 521 U.S. 591

10  (U.S. 1997).   Implicit in predominance is "the notion that the adjudication of common

11  issues will help achieve judicial economy."   *Zinser v. Accufix Research Institute, Inc.*,

12  253 F.3d at 1189.  Factors pertinent to the superiority inquiry include: "(A) the

13  interest of members of the class in individually controlling the prosecution or defense

14  of separate actions; (B) the extent and nature of any litigation concerning the

15  controversy already commenced by or against members of the class; (C) the

16  desirability or undesirability of concentrating the litigation of the claims in the

17  particular forum; (D) the difficulties likely to be encountered in the management of a

18  class action."  Fed. R. Civ. P. 23(b)(3).  Here, Defendant contends, and the Court

19  agrees, that individualized issues of fact and law predominate such that certification

20  under Rule 23(b)(3) is inappropriate for all of Plaintiffs' proposed classes.

21      As to Plaintiffs' Expense Reimbursement Class, under California law, questions

22  as to whether Defendants were required to reimburse employees' claimed business

23  expenses involves an individualized factual determination of whether each employee

24  (1) incurred an expense (2) that was necessary (3) and reasonable (4) as a direct

25  consequence of the discharge of his or her duties.  Cal. Lab. Code § 2802; *Gattuso v.*

26

27  ─────────────

28  allege they would otherwise be restrained from contacting (See Compl. ¶ 63), and on the other hand they
    acknowledge they may solicit. (DSE 81-82.)  As such, the Court notes that even the injunctive and
    declaratory relief Plaintiffs seek is undercut by monetary incentives.

*Harte-Hanks Shoppers, Inc.*, 169 P.3d 889, 897-98 (Cal. 2007).   These questions alone demonstrate the predomination of individualized issues, and do not even take into account the added typicality issues noted above (including the named Plaintiffs' failure to follow the corporate reimbursement policies by engaging in unsubstantiated "under the table" cash payments to support staff for which they now seek compensation, as well as their failure to document a number of other business expenses on corporate forms).  (*See* DSE 70-74, 77-78.)

In addition, as noted above, there were "extensive differences in . . . FA job duties, investment philosophies, marketing styles, and other key differences" such that the Overtime Class may similarly not be certified under this rule.  (DSE 91.)  Without closely scrutinizing the merits of Defendants' asserted defenses to Plaintiffs' overtime-related allegations (including the administrative and professional exemptions), the application of the defenses to any given employee's claims no doubt requires an individualized examination of that particular employee's duties.  *See* C.F.R. §§ 541.201(c), 203(b).  *See also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 945-46 (9th Cir. 2009) (noting that application of exempt status required individualized analysis of each employee's work activity, and declining to approve of the automatic certification of a class on the basis of nothing more than the defendant's internal "class-wide" exemption policy).

In regards to Plaintiffs' proposed Restraint of Trade Class, Plaintiffs allege that Defendants failed to disclose to its FAs during the hiring process that "promised signing 'bonuses' are merely loans which need to be repaid, with interest, from their future wages."  (Compl. ¶ 36(d).)  To the extent that Plaintiffs fail to allege that those "misrepresentations" were not contained within any standardized material distributed to the entirety of the proposed class (*see* DSE 66, noting the opposite, that is, that the materials circulated prior to acceptance of employment included a blank copy of the"acceleration" agreement), they must have rather been uttered in different forms, at different times, by different supervisors, resulting in potentially different

understandings.   However, individual plaintiffs' reliance on particular oral representations made by Defendants' various representatives in its various offices as to the actual import of the nature of the so-called "golden handcuffs" compensation scheme during the pendency of the class period involves "highly individualized and fact-specific determinations" such that "common" questions of law and fact cannot be said to predominate.  *See Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (noting that the plaintiffs' case was appropriate for class certification, in part, because the fact finder was to focus on *standardized* printed materials distributed to the class, rather than oral representations each broker made to each individual plaintiff that would have needed to be "parse[d]".)

Finally, none of Plaintiffs' proposed classes provide a superior method for the fair and efficient adjudication of any of Plaintiffs' claims.  Where damages suffered by each putative class member are not large, the first factor listed above weighs in favor of certifying the class action.  *See Amchem Products, Inc. v. Windsor*, 117 S. Ct 2231, 2245 (1997).  While Plaintiffs fail to indicate in their complaint the actual damages they expect to recover either individually or on an aggregate basis, Defendants are convinced that the individual class members stand to recover fairly sizable awards upon the successful prosecution of the asserted claims.  (Opp'n to MCC at 25; Dkt. #1.)  Plaintiffs neither disputed this contention in their Reply brief, or in response to Defendants' invocation of CAFA jurdisition in their Notice of Removal.  This factor therefore weighs against the certification of any of Plaintiffs' proposed classes.

In addition, there are more efficient methods of adjudicating the claims that Plaintiffs are now pursuing.  Indeed, Defendants point out, and Plaintiffs once again fail to contest, that all FAs (or putative class members), who incidentally must be registered with the Financial Industry Regulatory Authority ("FINRA") (DSE 35) in order to secure an FA position, have agreed to arbitrate employment claims before FINRA.  (Opp'n to MCC at 24.)  Moreover, as Defendants note, the California

Legislature has established a procedure to streamline many of the claims asserted in Plaintiffs' Complaint and on which Plaintiffs' attempt to base class certification.  Cal. Lab. Code § 98-98.4 (outlining hearing and appellate procedure before the Labor Commissioner specifically designed to preserve the rights of the parties).  *See also Dean Witter Reynolds, Inc. v. Super. Ct.*, 211 Cal.App.3d 758, 773 (1989).  Accordingly, the Court is of the opinion that a class action, involving roughly 1,600 putative class members, is neither the judicially economic, nor the "superior" method of adjudication of any of Plaintiffs' claims.  *See Bartenders and Culinary Workers Union, Local 340 v. Howard Johnson Co.*, 535 F.2d 1160, 1164 (9th Cir. 1976) (noting the "superiority of arbitration over administrative and judicial remedies").  For these reasons, Plaintiffs satisfy neither the predominance nor the superiority requirements of Rule 23(b)(3) such that class certification is merited.

## V.  CONCLUSION

Given the absence of typicality and adequacy, as well as the fact that certification under Rule 23(b)(2) and 23(b)(3) would both be inappropriate, Plaintiffs' Motion for Class Certification is DENIED in its entirety.


IT IS SO ORDERED.


April 30, 2010

_____
HON. OTIS D. WRIGHT II
UNITED STATES DISTRICT JUDGE