O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JEREMY DRAKE and ADAM SCOTT, on behalf of themselves and others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>MORGAN STANLEY & COMPANY, INC., MORGAN STANLEY DW, INC., and DOES 1-100 inclusive,<br><br>　　　　　　　Defendants.<br>_____ | CASE NO. CV 09-6467 ODW (RCx)<br><br>ORDER **GRANTING** DEFENDANT"S MOTION FOR PARTIAL SUMMARY JUDGMENT [68] |

## I.   INTRODUCTION

Currently before the Court is Defendant Morgan Stanley & Company Incorporated's ("Defendant") April 12, 2010 Motion for Partial Summary Judgment of Plaintiffs Jeremy Drake ("Drake") and Adam Scott's ("Scott") (collectively, "Plaintiffs") Private Attorney Generals Act ("PAGA") and Restraint of Trade Claims. (Dkt. # 68.) After considering the briefing and evidence submitted by the parties in support of and in opposition to the instant Motion, as well as the oral arguments advanced by the parties at the June 2, 2010 hearing on this matter, the Court GRANTS Defendant's Motion for Partial Summary Judgment.

## II. UNDISPUTED FACTS AND PROCEDURAL HISTORY

Given Plaintiffs' failure to file a Statement of Genuine Issues of Material Fact in Opposition to Defendant's Statement of Uncontroverted Facts and Conclusions of Law, the Court deems the following facts undisputed. *See* L.R. 56-3. Indeed, plaintiffs' counsel conceded at oral argument that there was no dispute as to the material facts.

Defendant provides financial advisory services for high net worth individuals and business institutions. (Defendant's Uncontroverted Fact "UF" 1.) Defendant hired Plaintiffs in January 2007. (UF 2.) At the time of hire, Plaintiffs were offered and accepted up-front loan payments from Defendant pursuant to promissory notes with corresponding bonus agreements. (UF 3.) The promissory notes offered to Plaintiffs were not a condition of employment with Defendant. (UF 4.)

During the recruitment process, Plaintiffs met with Defendant at least three to four times to discuss the details of their compensation if they chose to work for Defendant. (UF 5.) A month before they were hired, both Plaintiffs received a copy of the template promissory note documents, which fully set forth the details of the program, and both Plaintiffs signed an Acknowledgment Form certifying their understanding that the loans "[did] not constitute a bonus." (UFs 9, 32.) Specifically, Plaintiffs' promissory notes required them to repay the entire balance [outstanding principal and interest] of their up-front loan payments within five years whether or not they remained in Defendant's employ. (UFs 10, 32.) Both Plaintiffs understood that if they remained in Defendant's employ for the five year period of their notes, they would receive annual bonuses equal to their annual repayment obligations, subject to taxes. (UFs 7, 8, 11.) Both were informed and aware that if their employment ended within that five year period (whether or not they found subsequent employment with one of Defendant's competitors), the repayment obligation would be full and immediate, and they would no longer receive the corresponding bonus payments. The latter were contingent on their continued employment. (UFs 6, 12, 33.)

Pursuant to the agreements, Drake received an up-front loan of $88,000, and Scott received an up-front loan of $144,000. (UF 13.) Both Plaintiffs signed acknowledgment forms at that time explaining the terms of the promissory note agreement. (UF 14.) During the course of his employment, Drake received an additional $22,000 loan, subject to a similar promissory note and bonus agreement. (UF 15.) The loan payments were both free and clear, to be used for whatever purpose Plaintiffs chose. (UF 16.) Both Plaintiffs also signed "Financial Advisor Employment Agreements" ("FA Agreements") covering the obligations attaching to their Financial Advisor positions. Each was provided with copies of Defendant's Financial Advisor Compensation and Recognition Program booklets explaining the details of their compensation, and were given online access to monthly production summaries setting forth all of their compensation. (UFs 17-19.)

On February 27, 2009 Drake voluntarily left Defendant's employ to work for Defendant's competitor, Heller Capital ("Heller"). He was provided his final paycheck o this date.. (UFs 20, 29.) In his final pay period, Drake was not entitled to, nor did he receive any incentive compensation. (UFs 30, 31.) When he resigned, Drake understood that the balance on his two loans was immediately due and payable. (UF 21.) Drake took his client contact information with him pursuant to the Protocol for Broker Recruiting, and thereafter, actively solicited his former clients to Heller. (UF 22.) Drake understood and acknowledges that the Broker Protocol superseded the non-solicitation clause in his employment agreement, that Defendant would not prevent him from soliciting his clients. It is undisputed that Defendant has made no efforts to enforce the non-solicitation clause against him. (UF 23.) The non-solicitation clause has now expired. (Id.) Scott still works for Defendant. (UF 24.)

Plaintiffs filed their Complaint on July 30, 2009. (UF 25.) In the Complaint, Plaintiffs stated that they "[had] exhausted, or [were] in the process of exhausting, all administrative prerequisites to maintaining a PAGA representative action." (UF 26.) Prior to filing and serving the Complaint, however, Plaintiffs did not serve Defendant

with written notice of their PAGA claims. In addition, as of the date of the filing of the instant Motion, Plaintiffs have failed to produce documents demonstrating timely service of notice on the California Labor and Workforce Development Agency ("LWDA"). (UF 27, 28.) Plaintiffs have since filed a Notice of Exhaustion of Administrative Remedies, which includes an April 7, 2010 letter from Plaintiffs to the LWDA regarding the allegations in the Complaint, and a May 3, 2010 letter from the LWDA indicating its intention not to investigate those allegations. (Dkt. # 119.) The deadline to amend the pleadings in this case expired on January 25, 2010. (Dkt. # 18.)

### III. LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997). Evidence that court may consider includes the pleadings, discovery and disclosure materials, and any affidavits on file. Fed. R. Civ. P. 56(c)(2).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986). That burden may be met by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Once the moving party has met its initial burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id*. at 323-34; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Summary judgment is appropriate if a party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp v. Catrett*, 477 U.S. at 322.

Only genuine disputes – where the evidence is such that a reasonable jury could return a verdict for the nonmoving party – over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *see also Aprin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (the nonmoving party must present specific evidence from which a reasonable jury could return a verdict in its favor). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

It is not the task of the district court "to scour the record in search of a genuine issue of triable fact. [Courts] rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could *conveniently* be found.") (emphasis added).

## IV. DISCUSSION

### A. *Plaintiffs' PAGA Claims*

Defendant first contends that Plaintiffs' claims under the PAGA fail as a matter of law because Plaintiffs failed to "exhaust the required administrative prerequisites for bringing such a claim prior to filing this lawsuit."[1] (Motion "Mtn." at 1.)

The PAGA was enacted "to empower aggrieved employees . . . to seek civil penalties for *Labor Code* violations . . . which previously could be assessed only by state agencies." *Dunlap v. Super. Ct. of Los Angeles County*, (2006) 142 Cal.App.4th 330, 337. The PAGA provides that an aggrieved employee may now bring a claim for alleged violations of any of the provisions of the California *Labor Code* that provide for a civil penalty. California *Labor Code* section 2699(a). Before the employee can bring a claim for civil penalties, however, he must first exhaust his administrative remedies by giving

---

[1] The Court interprets this as a request for summary adjudication of Plaintiffs' right to recover certain types of relief under the PAGA. (See Reply at 2.) Pursuant to Rule 56(d), in the absence of summary judgment on entire claims the Court "should . . . determine by examining the pleadings and evidence before it . . . what facts — including items of damages or other relief — are not genuinely at issue."

5

written notice to the LWDA and the employer of the specific provisions of the code allegedly violated, including the facts and theories to support the alleged violation. *Id.* at § 2699.3(a)(1) (mandating that a civil action by an aggrieved employee pursuant to the PAGA "shall commence *only* after the [administrative] requirements have been met") (emphasis added). If the LWDA notifies the employer and aggrieved employee within 30 days that it does not intend to investigate the alleged violation, or if no notice is provided within 33 calendar days, the aggrieved employee may commence a civil action. *Id.* at § 2699.3(a)(2)(A).

Remedies under the PAGA are not exclusive. *See* Cal. Lab. Code § 2699. "An employer is potentially liable for unpaid wages and interest, statutory penalties and civil penalties for [] violations of Labor Code [] provisions." *Caliber Bodyworks , Inc. v. Superior Ct.*, 134 Cal.App.4th 365, 378 (2005) (noting that the PAGA administrative requirements apply only to prayers for civil penalties, and not to claims seeking other types of relief). *Accord Dunlap v. Super. Ct. of Los Angeles County*, 142 Cal.App.4th 330, 339 (explaining distinction between "a request for statutory penalties provided by the Labor Code for employer wage and hour violations, and a demand for 'civil penalties'"). Thus, to the extent that Plaintiffs seek civil penalties for violations of any of the sections to which PAGA applies, Plaintiffs must have exhausted their administrative remedies before filing an action stating those claims. However, to the extent that Plaintiffs seek unpaid wages or statutory penalties, the PAGA exhaustion requirements do not apply.

In evaluating which claims are defective for failure to plead PAGA compliance, the court may divide the claims into three categories: (1) those claims that seek only civil penalties, (2) those that seek only statutory penalties or unpaid wages, and (3) those that seek "hybrid" relief comprised of both civil penalties and one or both of the other two types of relief. *Caliber Bodyworks , Inc. v. Superior Ct.*, 134 Cal.App.4th at 378. Those claims falling into the first category are fatally defective. *Id.* at 382. The same cannot be said for the claims falling into the second category, as compliance with the PAGA is not required to recover statutory penalties or unpaid wages. *Id.* at 385. Those claims

falling into the "hybrid" category, however, are more problematic, as only the portion of the claim seeking civil penalties is objectionable. *Id.* Absent any defects unrelated to PAGA compliance, the rest of the claim remains valid. *Id.* Therefore, when a plaintiff is unable to plead or prove compliance with the PAGA administrative requirements, only the objectionable portion of a hybrid claim is subject to failure. *Id.*

Here, Plaintiffs assert five claims, four of which are subject to question under these rules. Specifically, Plaintiffs' claims for failure to (1) pay earned wages free and clear of employer deductions, charges and expenses; (2) pay minimum wage for all hours worked; (3) pay premium overtime compensation; and (4) timely pay earned wages all "seek recovery of *all* authorized penalties, including penalties under . . . Labor Code sections 2699(a) and 2699(f)." (Complaint "Compl." ¶¶ 46, 51, 55, 59, emphasis added.) While Plaintiffs do not specifically pray for "civil" penalties, it seems clear from Plaintiffs' request for "*all* authorized penalties," that the civil penalties authorized under sections 2699(a) and 2699(f) were contemplated and implicitly included in Plaintiffs' prayer. However, because these claims also seek other forms of relief, they must all be categorized as hybrid claims, for which only the PAGA non-compliant portions may be subject to summary adjudication.

Plaintiffs do not contest their failure to comply with the PAGA administrative requirements prior to filing the complaint. Indeed, despite their representation in their Complaint that they were "in the process" of exhausting the administrative prerequisites (Compl. ¶ 41), a process which, by its terms, should take no more than 33 days, Plaintiffs did not file a Notice of Exhaustion until May 6, 2010. (Dkt. # 119.) This notice indicates that not only did Plaintiffs fail to serve notice of their claims on the LWDA prior to the filing of the instant lawsuit as required by section 2699.3(a)(1), but that Plaintiffs waited to do so until more than eight months after filing suit and just five days before this Motion was filed. (See Dkt. #s 1, 68, 119, indicating that Plaintiffs filed suit on July 30, 2009, that Plaintiffs sent notice of their claims to the LWDA no earlier than April 7, 2010, and that Defendant filed the instant Motion on April 12, 2010. See also Mtn. at 6 n.3, indicating that Plaintiffs similarly failed to serve Defendant with its statutorily

mandated notice until April 8, 2010 Further, in their Opposition to this Motion, Plaintiffs admit that they "inadvertently failed to send their original administrative notice to that agency." (Opp'n at 18.) Therefore, there is no dispute that Plaintiffs failed to meet the statutory requirements that might have entitled them to civil penalties under the PAGA, and that, without more, Plaintiffs' requests for civil penalties under the PAGA (though not the remainder of each of their claims seeking other forms of relief) are subject to summary adjudication in Defendant's favor. *See Caliber Bodyworks , Inc. v. Superior Ct.*, 134 Cal.App.4th at 386.

Notwithstanding this failure, Plaintiffs contend they are entitled to amend their Complaint to reflect that the PAGA administrative requirements have finally been perfected. (Opp'n at 18, citing Cal. Lab. Code § 2699.3(a)(2)(C).) Rule 15(a)(2) requires that leave to amend pleadings be granted where justice so requires. However, this analysis takes on a different character after the Court issues a pre-trial scheduling order establishing a timetable for amending the pleadings, and the deadline expires before leave to amend is requested. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000.) Under such circumstances, Rule 16 requires that the scheduling order be modified "only for good cause." Fed. R. Civ. P. 16(b)(4). This standard "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). *Accord, Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141 (5th Cir. 1993) (affirming denial of request for leave to amend that was brought in response to imminent summary judgment nine months after the action was initiated); *Acri v. Int'l Ass'n of Machinists and Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir.1986) (stating that "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action").

Plaintiffs have been anything but diligent in seeking to amend their Complaint to plead PAGA compliance. First, there can be no question that Plaintiffs were aware of the pre-filing requirements, as they invoked the PAGA and indicated that they were in the process of exhausting its prerequisites in the original Complaint. (Compl. ¶ 41.)

8

Plaintiffs were then put on notice of their continued pleading deficiency by paragraph 28 of Defendant's September 3, 2009 Answer, which specifically noted Plaintiffs' failure to serve either Defendant or the LWDA with notice of their claims. (Dkt. # 1.) Not only did Plaintiffs then fail to request leave to amend before January 25, 2010, within the time authorized by the Court's Scheduling Order (Dkt. # 18), but they waited until the filing of their Opposition to Defendant's Motion for Summary Judgment, approximately three months after the deadline, to bring their desire to do so to the Court's attention. (Opp'n at 18.) Indeed, Plaintiffs failed to request leave to amend before the Scheduling Order deadline because, inadvertently or otherwise, they failed to satisfy the administrative prerequisites until just last month, as demonstrated by the Notice of Exhaustion they filed after Defendant filed this Motion. (Opp'n at 18; Dkt. # 119.) Thus, not only were Plaintiffs not diligent in requesting leave to amend, but they were not diligent in perfecting the claims that they seek to re-plead. Accordingly, Plaintiffs have failed to demonstrate good cause for modifying the Court's Scheduling Order.[2] *See Nunez v. Duncan*, 591 F.3d 1217, 1224, 1228 (9th Cir. 2010) (affirming summary judgment on one claim for failure to exhaust administrative remedies, and excusing failure to exhaust on another claim only because plaintiff "took reasonable and appropriate steps to exhaust . . . and was precluded from [doing so], not through his own fault but by [defendant's] mistake").

Plaintiffs correctly note that the PAGA provides that "a plaintiff may as a matter of right amend an existing complaint to add a cause of action arising under this part at any time within 60 days of the time periods specified in this part." Cal. Lab. Code §

---

[2] In any event, amendment as to Drake would be futile, as his employment with Defendant ended over one year before his perfection of the PAGA requirements. *See Baas v. Dollar Tree Stores, Inc.*, 2009 WL 1765759, *5 (N.D.Cal. 2009) (citing *Thomas v. Home Depot USA Inc.*, 527 F.Supp.2d 1003, 1008 (N.D.Cal.2007) (noting that PAGA claims are subject to a one year statute of limitations); *Moreno v. Autozone, Inc.*, 2007 WL 1650942, *4 (N.D.Cal. 2007) (holding that because the plaintiffs failed to serve PAGA notice until after the statute of limitations had run, their proposed PAGA claims could not relate back); *Wilson v. The People ex rel. Dep't of Pub. Works*, 271 Cal.App.2d 665, 669 (1969) ("A subsequent pleading which sets out the subsequent performance of a statutory condition precedent to suit cannot relate back to the time of the filing of the original complaint . . . since the rule of relation back does not operate to assign the performance of a condition precedent to a date prior to its actual occurrence.")).

2699.3(a)(2)(C). However, "the mandatory nature of the state rule governing amendments is inconsistent with the federal discretionary rule, which permits a uniform and consistent system guided by good cause, delay, prejudice, and other discretionary factors central to the Court's exercise of judgment in its case management authority." *Robert Half Intern. Inc. v. Murray*, 2008 WL 2610793, *4-5 (E.D. Cal. 2008) (citing *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 6-7 (1987) (discussing with approval the application of federal procedural rules in the face of contrary mandatory state procedure). The Court therefore sees no reason why the federal procedural rules should not be followed here.

Accordingly, Plaintiffs' request for leave to amend their Complaint is **DENIED**, and Defendant's Motion for Summary Adjudication of Plaintiffs' right to recover PAGA civil penalties is **GRANTED**. Given Plaintiffs' failure to satisfy the PAGA administrative prerequisites before filing suit, Plaintiffs may not recover any civil penalties authorized under California Labor Code sections 2699(a) and 2699(f).

**B.** *Plaintiffs' Restraint of Trade Claim*

Defendant also contends that summary adjudication is proper in regards to a majority of the grounds underlying Plaintiffs' restraint of trade claim. (Mtn. at 1.) Plaintiffs' claim alleges that Defendant engaged in impermissible "restraint of trade" in violation of California *Business and Professions* Code sections 17200 and 16600 ("Unfair Competition Law" or "UCL") by (1) failing to disclose that the money received at the start of employment was a loan with a repayment obligation; (2) using the promissory notes as an unlawful means to prevent Plaintiffs from going to work for a competitor; (3) restraining Plaintiffs' post-termination contacts with clients with the non-solicitation clause in the FA Agreement; (4) delaying payment of post-termination commissions for longer than allowed by California law; and (5) subjecting Plaintiffs' commission payments to unpredictable deductions. (Mtn. at 6, citing Compl. ¶ 63.) Plaintiffs allege that these "mutually reinforcing provisions identified as [Defendant's] 'Golden Handcuffs' policy constitute a form of unfair competition under" the UCL. (Opp'n at 5.)

Defendant currently challenges all but Plaintiffs' fifth ground for asserting this claim. (Id.)

Plaintiffs contend that Defendant "utterly fails to carry its summary judgment burden as it fails to present any evidence supporting the motives or effects of its policies." (Opp'n at 2.) As a preliminary note, Plaintiffs fundamentally misunderstand the parties' respective summary judgment burdens. As explained above, pursuant to *Celotex* and *Anderson*, Defendant need only, and does, establish an absence of evidence to support Plaintiffs' legal and factual contentions. It is then up to Plaintiff to produce sufficient evidence to rebut Defendant's establishment of Plaintiffs' legal or factual shortcomings.

The UCL prohibits unlawful, unfair, and fraudulent business acts or practices. *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008); California *Business & Professions*. Code § 17200. An unlawful act is "anything that can properly be called a business practice and that . . . is forbidden by law . . . be it civil, criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Id.* at 1152. However, the "UCL has a broad scope that allows for 'violations of other laws to be treated as unfair competition that is independently actionable' while also 'sweep[ing] within its scope acts and practices not specifically proscribed by any other law.'" *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009) (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (2002)). *Accord Nat'l Rural Telecomm. Co-op. v. DIRECTV, Inc.*, 319 F. Supp.2d 1059, 1075 (C.D. Cal.2003) (explaining that unfair acts are defined broadly, allowing the courts great discretion to prevent new schemes to defraud). The "test for determining an 'unfair' practice is whether the gravity of the harm to the victim outweighs the utility of the defendant's conduct." *Id.*

Contrary to Plaintiffs' assertion that they need not meet all of the requirements to demonstrate standing because they seek only injunctive and declaratory relief under the UCL (Opp'n at 14), Plaintiffs must also establish *both* that they have suffered an injury in fact and lost money or property. *Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025 (9th Cir. 2009) (citing *Californians for Disability Rights v. Mervyn's, LLC*, 138 P.3d 207,

209-10 (Cal. 2006); California *Business and Professions* Code section 17204. A general and unparticularized injury caused by a defendant's allegedly unfair conduct is insufficient to establish the standing of private plaintiffs. *Animal Legal Def. Fund v. Mendes*, 160 Cal.App.4th 136, 146-147. *Accord, Troyk v. Farmers Group, Inc.*, 171 Cal.App.4th 1305, 1346 (2009) (citations omitted) (requiring a plaintiff seeking to prove standing to show an invasion of a legally protected interest which is (a) concrete and particularized, that is, affecting the plaintiff in a personal and individual way, and (b) actual or imminent).

Because Plaintiffs fail to establish issues of material fact as to their standing and the occurrence of the events cited as grounds for bringing their claim, Defendant is entitled to summary adjudication on all of the challenged UCL claim grounds.[3]

### 1. <u>Alleged Failure to Disclose that the Money Received at the Commencement of Employment was a Loan</u>

Defendant first argues that Plaintiffs fail to adduce sufficient evidence to create a triable issue of material fact as to Defendant's failure to disclose that the money received upon the commencement of employment was a loan rather than a bonus. (Mtn. at 7.) Indeed, Plaintiffs failed to present any evidence to dispute the fact that all of the material terms of the loan were disclosed prior to their acceptance of employment with, and advances from, Defendant. Specifically, Plaintiffs do not dispute that they met with Defendant at least three times to discuss the details of their compensation, that they were afforded approximately one month to review th

e promissory notes into which they were entering, that they signed Acknowledgment Forms indicating their understanding that the loans did not constitute bonuses, that their promissory notes required them to repay the entire balance of their loans within five years, that they would be eligible for bonuses in the amount of their annual repayment

---

[3] The Court notes that the result is the same whether each of Plaintiffs' allegations is considered individually or in conjunction with the other alleged grounds for Plaintiffs' claim.

obligations for the period that they remained in Defendant's employ, and that they were aware that their repayment obligations would be full and immediate if they left Defendant for any reason within those five years. (UFs 5-12, 21, 32, 33.)

Thus, it is irrelevant whether non-disclosure of the loan terms would constitute an unfair practice under the UCL, as Plaintiffs have failed to move beyond their pleadings and present any evidence to suggest that any non-disclosure even occurred, and therefore, that they suffered any injury or loss entitling them to standing to base their claim on such a practice. Accordingly, Plaintiffs may not base their UCL claim on this allegation, either individually or in conjunction with any other.

2. <u>Alleged Use of Promissory Notes as an Unlawful Means to Prevent Plaintiffs from Going to Work for a Competitor</u>

Defendant next contends that "Plaintiffs' argument that the acceleration clause contained in the promissory note agreements 'imposes a penalty on departing employees and thereby deters them from seeking employment with competitors' in violation of [s]ection 16600 is baseless." (Reply at 5, quoting Opp'n at 12-13.) California Business and Professions Code section 16600 provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." While provisions providing for the assessment of monetary penalties triggered only when employees accept competing employment may in fact violate this section (*see Chamberlain v. Augustine*, 156 P. 479 (Cal. 1916); *Muggill v. Reuben H. Donnelley Corp.*, 42 Cal.Rptr. 107 (Cal. 1965)), those that trigger existing obligations regardless of the reason for or result of departure do not. *See Brecher v. Citigroup Global Markets, Inc.*, 2010 WL 1291940, *3 (S.D. Cal. 2010) (relying on *Schachter v. Citigroup, Inc.*, 218 P.3d 262 (Cal. 2009)).

In *Brecher*, the plaintiffs complained of acceleration provisions nearly identical to those of which Plaintiffs complain here. *Brecher v. Citigroup Global Markets, Inc.*, 2010 WL 1291940, *3 (S.D. Cal. 2010) (describing an acceleration provision whereby "the employer made loans to Plaintiffs in exchange for a promissory note. For each year

Plaintiffs worked there, a portion was forgiven. If Plaintiffs left employment, the loans accelerated immediately"). The court found the plaintiffs' allegation that these provisions constituted an anti-competitive policy "attenuated" because the "acceleration was triggered by termination of employment, and not by competition." *Id.* at *4. The court also noted that "[w]hile an employee receiving a bonus might spend it and become unable to pay it back easily," acceptance of a loan was (like here) neither required in order to secure employment, nor encouraged. *Id.* Accordingly, such an acceleration clause did not violate section 16600. *Id.*

Plaintiffs do not dispute that they knew their notes required them to repay the entire balance of their loan payments (regardless of their uses for the money) within five years whether or not they left Defendant's employ, and if they left, whether or not they secured competing positions. (UFs 6-8, 10-12, 32, 33.) This scenario mirrors that found non-offensive in *Brecher*, and thus, is not anti-competitive.

Even if the acceleration clause was to be found anti-competitive in the abstract, there is no dispute that Drake was not in any way "restrained" from going to work for a competitor, as he voluntarily resigned from his position with Defendant on February 27, 2009 to work for Heller, another investment firm. (UF 20; Higgins Declaration "Decl," Exhibit "Ex." A, 284-85.) Drake stated that the date that he started working for Heller was "based solely on [his] own personal schedule," that is, when he "was comfortable doing it." (Higgins Decl., Ex. A, 284.) Moreover, Drake admitted that he was aware that his notes would become immediately due and payable upon his departure, and that understanding "[did not] prevent [him] from resigning his position." (Higgins Decl., Ex. A, 285.) That Drake is now subject to repayment of a loan that he knowingly and voluntary undertook but which he would rather not or cannot now repay does not establish an injury in fact such that he can argue that he has standing to bring a UCL claim against Defendant on this basis.

Scott's Declaration that he has been warned that Defendant might terminate his employment and that he is concerned about his repayment obligations (Scott Decl. ¶ 4)

similarly does not prove that his mobility has actually been curtailed in any way. Indeed, Scott fails to allege that he was interested in or had the opportunity to leave Defendant's employ (to work for a competitor or otherwise), or that his repayment obligations in any way persuaded him not to pursue any other employment options. As such, Scott too fails to raise a genuine issue of material fact as to his standing to base a UCL claim against Defendant on this particular allegation.[4] Accordingly, Plaintiffs may not base their UCL claim on this allegation either.

### 3. Alleged Restraint of Plaintiffs' Post-Termination Contacts with Clients Through the FA Non-Solicitation Clause

Defendant also argues that Plaintiffs cannot establish standing to allege that the non-solicitation clause in their FA Agreement unlawfully restrained them in any way. (See Mtn. at 9.) Drake once again does not dispute that when he voluntarily left Defendant's employ on February 27, 2009 to work for Heller, he took his client contact information with him. (UFs 20, 22.) He knew he could do so pursuant to the Protocol for Broker Recruiting, which superseded the non-solicitation clause at issue, and did proceed to contact chosen clients to attempt to convince them to follow him to Heller. (UF 23.) Drake admits he knew that Defendants would not, and in fact did not, try to stop him from doing so, and that in any event, the clause has now expired.[5] (Id.) Plaintiffs argue that Defendant's citation to "Drake's own second-hand lay opinion . . . concerning the legal effect of [the Protocol]" is not competent evidence to support a conclusion that any defects in Defendant's non-solicitation clause were somehow cured, and that the Court should consider Drake's Declaration that he "made the conscious decision not to initiate contact with a number of former clients that [he] otherwise could have retained"

---

[4] In the absence of evidence establishing that either of the Plaintiffs has standing to bring a UCL claim based on this allegation, Plaintiffs' retort that Defendant offers no evidence (such as "data regarding the percentage of former employees who have taken competitive versus non-competitive positions") to support its assertions that the acceleration clause has no effect on competition or employee mobility or that the utility of the clause outweighs any restraining impact (Opp'n at 12-13) is irrelevant.

[5] As such, Drake would not benefit from the declaratory or injunctive relief requested, once again precluding a finding that he has standing to assert this claim on this basis. *See, e.g., Walsh v. Nev. Dept. of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006).

as creating a triable issue of material fact as to injury in fact and monetary loss. (Opp'n at 12, Drake Declaration ¶ 9.) However, it is Drake's Declaration that is incompetent evidence in this case, as "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).[6]

As such, it is clear that not only did the non-solicitation clause not prevent Drake from seeking and accepting gainful employment elsewhere, but his contact with his former clients was not in any way curtailed by Defendant. He therefore cannot (and does not) demonstrate that he personally suffered either any injury in fact or any economic loss such that standing is possible. Because Scott is still employed by Defendant (UF 24), even if the Protocol for Broker Recruiting did not supersede the non-solicitation clause (which it does and of which Scott is now certainly aware), Scott similarly cannot, and does not, demonstrate the requisite personal injury to establish standing to support a UCL claim based on this clause. Once again, Plaintiffs may not base their UCL claim on this allegation.

### 4. Alleged Delay in Payment of Post-Termination Commissions

Finally, Plaintiffs' allegations that Defendant delayed in paying post-termination commissions has also proved to be factually unfounded. Plaintiffs do not dispute that Drake received his final paycheck on the day he resigned, and that he was not entitled to any incentive compensation (commissions) during that pay period. (UFs 29-31.)

---

[6] While this "sham affidavit" rule is not without limitation (*Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)), the Court finds the conditions for the invocation of the rule satisfied in this case. Because, the rule "does not automatically dispose of every case in which a contradictory affidavit is introduced . . . the district court must make a factual determination that the contradiction was actually a sham." *Id.* (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d at 266-67). Second, the "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous . . . [so that] the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony . . . [or] minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence." *Id.* at 998-99 (quoting *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995)). Because Drake's Declaration that he made a "conscious decision" not to initiate contact with former clients flatly contradicts his prior deposition testimony that he understood that he could, and successfully did, influence former clients to bring their business to Heller Capital (Higgins Decl., Ex. A, 286-88), does not serve to "clarify" or "elaborate upon" his prior deposition testimony, and does not purport to establish any mistake or newly discovered evidence, Drake's Declaration constitutes a "sham affidavit" and cannot create the intended genuine issue of material fact.

Plaintiffs' failure to dispute Defendant's evidence must result in the inference that Defendant employs no such allegedly unfair policy, therefore foreclosing Plaintiffs' ability to base their UCL claim on this allegation. Further, Because Drake does not dispute that he was timely paid all wages to which he was entitled, he cannot, and indeed, does not attempt to present any evidence to create a triable issue of material fact as to any injury he sustained or monetary loss suffered.[7]

In sum, that Defendant allegedly "put[s] . . . creativity to work in crafting employment policies that work to its competitive advantage" (Opp'n at 7) does not dictate that those polices are also unfair as a matter of law. Because Plaintiffs failed to raise a genuine issue of material fact as to the occurrence or unfairness of any of the challenged grounds for their UCL claim, and adduced no evidence whatsoever to support the allegations in their Complaint, summary adjudication as to the first four grounds asserted for Plaintiffs' UCL claim in Defendant's favor is appropriate.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment is GRANTED.[8]

IT IS SO ORDERED.

June 2, 2010

_____
HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE

---

[7] Similarly, because Scott is still employed by Defendant, he is not entitled to "post-termination" commissions. Accordingly, Scott cannot establish that any such delay caused him injury or loss.

[8] Plaintiffs contention that Defendant's Motion should be continued under Rule 56(f) based on the alleged refusal to produce the identities and contact information of putative class members (Opp'n at 5) is also unavailing, as the Court denied class certification of this case (Dkt. # 124), making any such identities irrelevant for purposes of the present Motion.